**FIRST ACT, INC., Plaintiff**

v.

**BROOK MAYS MUSIC COMPANY, Defendant.**

No. CIV.A. 03–12020–EFH.

United States District Court,
D. Massachusetts.

April 2, 2004.

Julia Huston, Bromberg & Sunstein LLP, Lee C. Bromberg, Bromberg & Sunstein LLP, Sarah C. Peck, Bromberg & Sunstein, Boston, MA, for First Act Inc., Plaintiff.

David J. Volkin, Fitzhugh, Parker & Alvaro LLP, Edward P. O'Leary, Fitzhugh, Parker & Alvaro LLP, Jeffrey A. Novins, Fitzhugh, Parker & Alvaro LLP, Boston, MA, for Brook Mays Music Company, Inc., Defendant.

**MEMORANDUM AND ORDER**

HARRINGTON, Senior District Judge.

This case comes before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. It is the original step in the judicial process to determine the legal authority to exercise judicial power prior to the exercise of such power. For the reasons set forth below, the Court denies the motion.

On October 17, 2003, Plaintiff First Act, Inc. ("First Act"), a Massachusetts corporation with its usual place of business in Massachusetts, initiated suit against Defendant Brook Mays Music Company, Inc. ("Brook Mays"), a Texas corporation with its corporate headquarters in Texas. Both plaintiff and defendant manufacture and sell musical instruments. The present lawsuit arises principally from a statement entitled "ISO Alert" issued by Brook Mays regarding the quality of First Act's instruments.[1] In its amended complaint, First Act alleges false advertising, defamation, commercial disparagement, intentional interference with existing and prospective business relationships, and a violation of Section 1 of the Sherman Act. Brook Mays responds with the present Motion to Dismiss, which argues that its contacts with Massachusetts are insufficient to justify this Court's exercise of personal jurisdiction over it. The matter has been fully briefed, and the parties argued to the Court on March 24, 2004.

At this stage of the litigation, the Court takes the facts alleged by the plaintiff as true, along with the facts alleged by the defendant, to the extent that they are uncontroverted. *Mass. Sch. of Law at Andover, Inc. v. A.B.A.*, 142 F.3d 26, 34 (1st Cir.1998). Of course, the Court need not "credit conclusory allegations or draw farfetched inferences." *Id.* On this basis, the Court recounts facts which pertain to per-

---

1. "ISO" stands for Instrument–Shaped Ob-     ject.

sonal jurisdiction. Most importantly, Brook Mays sent the ISO Alert to 8,000 e-mail addresses across the country, including 60 to individuals who had provided a Massachusetts street address. Brook Mays' other contacts with Massachusetts are more limited. A very small amount of its revenue derives from sales of musical instruments to Massachusetts customers through its website.[2] In addition, Brook Mays has had occasional isolated and fortuitous contacts with Massachusetts.

As in any diversity case, the requirements of both the Massachusetts long-arm statute and the Due Process clause of the federal Constitution must be met. *Lyle Richards Int'l Ltd. v. Ashworth, Inc.*, 132 F.3d 111, 112 (1st Cir.1997). In the present case, Brook Mays observes that the Massachusetts long-arm statute, Mass. Gen.L. ch. 223A, § 3, has been construed to permit jurisdiction to the limits allowed by the federal Constitution. *See Tatro v. Manor Care, Inc.*, 416 Mass. 763, 771, 625 N.E.2d 549 (1994). Thus, Brook Mays urges the Court to follow an approach approved by the First Circuit by "side-step[ing] the statutory inquiry and proceed[ing] directly to the constitutional analysis." *Daynard v. Ness, Motley, Loadholt, Richardson, & Poole*, 290 F.3d 42, 52 (1st Cir.2002). At oral argument, the parties implicitly conceded that jurisdiction exists under the long-arm statute; thus the Court directs its attention to the requirements of the Due Process clause of the federal Constitution.

■ The Due Process clause requires that a nonresident defendant have sufficient minimum contacts with the forum so that exercise of jurisdiction by the Court "does not offend 'traditional notions of fair play and substantial justice.'" *Daynard*, 290 F.3d at 52 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct.

154, 90 L.Ed. 95 (1945)). The burden of persuading the court that jurisdiction exists is ultimately upon the plaintiff. *Mass. Sch. of Law*, 142 F.3d at 34.

A court may exercise either general or specific personal jurisdiction over a defendant. General jurisdiction exists where a defendant "has maintained a continuous and systematic linkage with the forum state;" such a defendant "brings himself within the general jurisdiction of that state's courts in respect to all matters, even those that are unrelated to the defendant's contacts with the forum." *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999). First Act has not argued that Brook Mays' limited contacts with Massachusetts subject it to the general personal jurisdiction of this Court. Thus, only specific jurisdiction is at issue in the present case.

■ The First Circuit has described the specific jurisdiction inquiry as a "tripartite analysis." *Phillips Exeter*, 196 F.3d at 288. Under this analysis, First Act must demonstrate (1) that its claims relate to or arise out of Brook Mays' contacts with Massachusetts, (2) that those contacts constitute purposeful availment of the benefits and protections afforded by Massachusetts law, and (3) that the exercise of jurisdiction is reasonable in light of a number of factors that touch upon fundamental fairness. *Id.* The first and third elements do not require extended analysis in the present case.

The first asks the court to examine the "causal nexus between the defendant's contacts and the plaintiff's cause of action." *Phillips Exeter*, 196 F.3d at 289; *see also Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir.1994). The Brook Mays e-mail which was sent to recipients

**2.** First Act reports that sales to Massachusetts residents last year amounted to approximately $24,000. Brook Mays reports that its total revenue last year exceeded $155,000,000.

who included 60 people in Massachusetts is a contact for purposes of this inquiry. *See Mass. Sch. of Law*, 142 F.3d at 36 (stating that "[t]he transmission of facts or information into Massachusetts via ... mail would of course constitute evidence of a jurisdictional contact directed into the forum state ..."). Because that very e-mail is the subject of the counts in the present lawsuit, it is a contact which is causally connected to the cause of action.[3]

■ The third element, reasonableness, is examined in light of the *Gestalt* factors: (1) the burden on the defendant in appearing; (2) the interest of the forum state in adjudicating the dispute; (3) the interest of the plaintiff in obtaining convenient and effective relief; (4) the interest of the judicial system in obtaining the most effective resolution of the controversy; and (5) the interests common to all sovereigns in promoting substantive social policies. *Foster–Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 150 (1st Cir.1995). To the extent these factors are relevant in the present case, they favor exercise of jurisdiction. First, litigating in Massachusetts imposes no extraordinary hardship upon Brook Mays, a corporation which does business in many states. *See Back Bay*

*Farm v. Collucio*, 230 F.Supp.2d 176, 187 (D.Mass.2002). Second, a federal court in Massachusetts has an interest exercising jurisdiction over an entity that allegedly caused tortious injury within its borders. *See Ticketmaster*, 26 F.3d at 211. In considering the third factor, this Court observes the First Circuit's directive that "courts considering jurisdictional issues generally should 'accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience.'" *Foster–Miller*, 46 F.3d at 151 (citing *Ticketmaster*, 26 F.3d at 211). The fourth and fifth elements do not greatly influence the Court's analysis.

Ultimately, then, the disposition of the present motion turns on a rather narrow legal issue: whether the 60 e-mails sent to persons with Massachusetts mailing addresses satisfy the purposeful availment element of a due process specific personal jurisdiction evaluation. The First Circuit has noted that *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), adopts an "effects test for determining purposeful availment in the context of defamation cases." *Noonan v. The Winston Co.*, 135 F.3d 85, 90 (1st Cir.1998).[4] In *Calder*, a reporter and editor for the Na-

---

**3.** At oral argument, counsel for Brook Mays argued that First Act's showing on this point was insufficient, because First Act has not proffered evidence that it was damaged specifically by the 60 e-mails that were sent to Massachusetts. In light of First Circuit precedent, the Court doubts that causation need be parsed so finely. *See Hugel v. McNell*, 886 F.2d 1, 5 (1st Cir.1989) (sustaining personal jurisdiction in New Hampshire over nonresident defendants who provided allegedly defamatory material to the *Washington Post* for nationwide publication). Further, at least as to the defamation claim, damages are not an essential element. According to the Massachusetts Supreme Judicial Court, "statements that may prejudice the plaintiff's profession or business," which First Act alleges the ISO alert to be, are "actionable without proof of economic loss." *Ravnikar v. Bogojavlensky*,

438 Mass. 627, 630, 782 N.E.2d 508 (2003). In fact, even an undamaged plaintiff may recover nominal damages in Massachusetts. *Id.*

**4.** First Act argues that the Court need not analyze the effects of Brook Mays' ISO Alert, citing *Murphy v. Erwin–Wasey, Inc.*, 460 F.2d 661 (1st Cir.1972), for the proposition that "there can be no constitutional objection to Massachusetts asserting jurisdiction over the out-of-state sender of a fraudulent misrepresentation" because the sender of such a statement purposefully avails itself of the benefits and protections of Massachusetts law merely by virtue of sending the statement into the forum. *Id.* at 664. First Act relies on *Murphy* to argue that when Brook Mays sent the ISO Alert via e-mail to Massachusetts, it similarly purposefully availed itself of Massachu-

tional Enquirer, acting in Florida, wrote an allegedly defamatory article about the popular entertainer Shirley Jones, who brought suit in California Superior Court. 465 U.S. at 784–85, 104 S.Ct. 1482. The Supreme Court approved jurisdiction because the defendants aimed intentional actions at the forum state, knew that their article was likely to have a devastating impact on the plaintiff, and knew that the brunt of the injury would be felt by the plaintiff in the forum state where she lived and worked and where the article would have the largest circulation. 465 U.S. at 789–90, 104 S.Ct. 1482; *see also Hugel v. McNell,* 886 F.2d 1, 4 (1st Cir.1989).

The first part of *Calder* 's framework has been construed to require a showing that Brook Mays intentionally directed its actions towards Massachusetts. *Noonan,* 135 F.3d at 90. Brook Mays relies on two First Circuit cases to show that it did not act with the requisite intent; however, in the *Court's* view, these cases demonstrate just the opposite. In *Noonan,* the First Circuit refused to find jurisdiction over Lintas:Paris, a French advertising agency, which was sued by a Boston police officer for allegedly misusing his photograph in a cigarette ad published in a French magazine. 135 F.3d at 87–88. Although some 305 copies of the magazine were distribut-

ed within Massachusetts, the First Circuit held that Lintas:Paris did not intentionally aim its actions toward the state, first because Lintas:Paris was apparently unaware that any magazines containing the offending advertisement would reach Massachusetts, and, second, because the relatively small number of magazines distributed in Massachusetts was evidence of a lack of purposeful contact with the state. 135 F.3d at 90–92. In the present case, Brook Mays was aware that e-mails would be sent to Massachusetts because Brook Mays itself sent the e-mail to persons on a list that it maintained and controlled. Unlike Lintas:Paris, which created an advertisement and placed it in a magazine unaware of the precise characteristics of that magazine's circulation, Brook Mays knew or should have known precisely who would receive the ISO Alert.[5]

■ The case of *Ticketmaster–New York, Inc. v. Alioto,* 26 F.3d 201 (1st Cir. 1994), is similarly unavailing for Brook Mays. In *Ticketmaster,* a lawyer in California received a telephone call from a Boston Globe reporter and made allegedly defamatory statements about the plaintiff. 26 F.3d at 203–04. The First Circuit held that the lawyer-defendant did not purposefully avail himself of Massachusetts, noting both that he did not initiate contact with

---

setts law and thus subjected itself to the personal jurisdiction of this Court.

The Court does not accept this argument for several reasons. First, *Murphy* dealt primarily with interpreting the Massachusetts long-arm statute, rather than constitutional due process concerns. Second, the First Circuit has subsequently expressed "profound reservations" about extending this rationale of *Murphy* beyond claims for fraudulent misrepresentation. *See Ticketmaster,* 26 F.3d at 205 n. 5. Consequently, the Court uses the effects test originating from *Calder v. Jones* to analyze purposeful availment. It should be noted that the First Circuit decided *Murphy* well before the Supreme Court's decision in *Calder.*

**5.** Furthermore, the relatively small number of e-mails sent to Massachusetts do not evince a lack of purposeful contact in the present case. The Ninth Circuit has observed that "mailing to regular subscribers, even though few, is not random or fortuitous and is not even necessarily isolated ... it is not clear why [mailing a small number of newspapers into the forum] loses magnitude as a contact simply because the Daily News does a lot of other things elsewhere." *Gordy v. Daily News, L.P.,* 95 F.3d 829, 833–34 (9th Cir.1996) (finding personal jurisdiction over newspaper which distributed only 13 to 18 copies containing allegedly defamatory material to subscribers in the forum).

the reporter and that he had no effective control over the newspaper's subsequent decision to republish his statements.[6] 26 F.3d at 208–09. Again, the present case is rather different. Brook Mays both created and distributed the ISO Alert. There was no other entity which decided whether or not to distribute the ISO alert. Thus, Brook Mays acted with the requisite intent to purposefully avail itself of the benefits and protections of Massachusetts law.

The remaining requirement of the *Calder* test asks the Court to analyze the "injurious effects" of the alleged actions. *Noonan*, 135 F.3d at 90. In *Calder*, the Court focused on the facts that the defendants knew that their article was likely to have a devastating impact on the plaintiff and knew that the brunt of the injury would be felt by the plaintiff in the forum state where she lived and worked and where the article would have the largest circulation. 465 U.S. at 789–90, 104 S.Ct. 1482. In the present case, Brook Mays expected its article to have a strong negative impact on First Act. Indeed, the ISO Alert appears designed to ensure that customers who read it do not purchase First Act instruments. Further, Brook Mays also expected the majority of effects of its statement to be felt in Massachusetts. Like Shirley Jones, who lived and worked in California, First Act, a Massachusetts corporation with its usual place of business in Massachusetts, lives and works in Massachusetts. At the same time, some impact of the ISO Alert is also likely to be felt in the southern states where First Act competes with Brook Mays. Further, while the reporter and editor in *Calder* knew that the National Enquirer was circulated more widely in California than in any other state, here the circulation of the ISO alert in Massachusetts was relatively small. However, the fact that Brook Mays controlled the distribution of the ISO alert by sending it to e-mail addresses on a list it maintains suggests that Brook Mays knew it was sending the statement into First Act's home state. *See also* note 5, *supra*. Ultimately, recognizing that the question is close, the Court concludes that Brook Mays has alleged sufficient injurious effects on First Act in Massachusetts to satisfy this prong of the *Calder* analysis.

Because all elements of the specific jurisdiction analysis are satisfied in the present case, this Court concludes that its exercise of personal jurisdiction over Defendant Brook Mays passes muster under the Due Process clause of the federal Constitution. For this reason, the Court denies Brook Mays' Motion to Dismiss.

SO ORDERED.

---

**6.** It should be noted that *Ticketmaster* did not employ the *Calder* approach to analyzing purposeful availment. The *Calder* approach was approved for defamation cases in this circuit in *Noonan*, decided four years after *Ticketmaster*. Rather, *Ticketmaster* evaluated purposeful availment by examining the voluntariness and foreseeability of the defendant's actions, which is the typical analysis in non-defamation cases. However, the facts of *Ticketmaster* and the First Circuit's analysis nonetheless illuminate this Court's evaluation of the present case under the *Calder* framework.