**WHISTLER CORPORATION, Plaintiff,**

v.

**SOLAR ELECTRONICS, INC.**
**Defendant.**

**Civ. A. No. 87–1341–Y.**

United States District Court,
D. Massachusetts.

April 25, 1988.

Charles L. Gagnebin, III, Paul J. Hayes, Steven M. Bauer, Weingarten, Schurgin, Gagnebin & Hayes, Boston, Mass., for plaintiff.

Leo Reynolds, Hamilton Brook Smith & Reynolds, Lexington, Mass., for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

Plaintiff Whistler Corporation ("Whistler") brought this action against defendant Solar Electronics, Inc. ("Solar"), seeking a declaratory judgment that United States Patent 3,550,008, which is owned by Solar, is invalid, unenforceable, and not infringed by a Whistler product. Whistler alleges that the subject matter jurisdiction of this Court is based on 28 U.S.C. §§ 1338(a), 2201, and 2202, and that venue exists pursuant to 28 U.S.C. § 1391(b). This matter is presently before the Court on the June 29, 1987 motion by defendant Solar to dismiss the case for lack of jurisdiction and to quash the attempted service of process.

## I. BACKGROUND

Plaintiff Whistler, a Massachusetts corporation having an office in Westford, Massachusetts, is a manufacturer of radar detector devices. Formerly known as Controlonics, Whistler manufactured radar detectors for Tandy Corporation ("Tandy"), a Delaware corporation, during the years 1985 and 1986. These radar detectors were sold under the Radio Shack name.

Defendant Solar, a Colorado corporation, is the owner of United States Patent 3,550,008 (the "'08 Patent"), a patent concerning the electronic circuitry of a police radar detector. Such electrical circuitry technology was developed by James Bright ("Bright"), who was granted the '08 Patent in December, 1970. Bright then transferred the patent to Solar in exchange for a one-half interest in the Solar stock. Between 1968 and 1974 Solar sold approximately 15,000 radar detectors in Colorado, Kentucky, Tennessee, Missouri, and Oklahoma; however, Solar stopped selling and manufacturing radar detectors in 1974.

On December 23, 1986, Solar filed an action against Tandy in the United States District Court for the Northern District of Illinois, alleging that Tandy's sale of radar detectors infringed the '08 Patent. One of the accused infringing radar detectors was Tandy Model No. 22-1613, which was manufactured by Whistler, then known as Controlonics. Whistler then filed this action against Solar on May 26, 1987, seeking a declaratory judgment that the '08 Patent is invalid, unenforceable, and not infringed by Tandy Model No. 22-1613.

Solar asserts the following arguments in support of its motion to dismiss: 1) this Court lacks *in personam* jurisdiction over Solar; 2) there is no subject matter jurisdiction over this action; 3) venue in this patent declaratory judgment case is not proper in this district; and 4) attempted service of process was not proper and should be quashed. Accepting all Whistler's statements as true for the purpose of this motion only, the Court rules that it lacks *in personam* jurisdiction over defendant Solar.[1]

## II. DISCUSSION

### A. Personal Jurisdiction in Federal Question Cases.

In arguing whether this Court has personal jurisdiction over defendant Solar, both parties analyzed this problem in terms of a state's power to summon an out-of-state defendant with respect to the re-

---

**1.** Accordingly, the Court need not and, indeed, does not address the other arguments raised by Solar in its motion.

straints of the due process standards under the fourteenth amendment. This case, however, is based on federal question jurisdiction, which is to be governed by the due process standards of the fifth amendment rather than the fourteenth amendment.[2] *Driver v. Helms,* 577 F.2d 147, 156–57 (1st Cir.1978), *rev'd on other grounds sub nom. Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980); *Stanley Works v. Globemaster, Inc.,* 400 F.Supp. 1325, 1334 n. 13 (D.Mass.1975) (holding that "in the context of a patent infringement action the issue of what constitutes 'minimum contacts' is a matter of federal law") (citations omitted).

At the outset it must be understood that "minimum contacts" with a particular district or state for purposes of personal jurisdiction is not a limitation imposed on the federal courts in a federal question case by due process concerns. The Constitution does not require the federal districts to follow state boundaries.

*Johnson Creative Arts, Inc. v. Wool Masters, Inc.,* 743 F.2d 947, 950 (1st Cir.1984) (footnote and citation omitted).

In establishing the jurisdictional scope of the fifth amendment, First Circuit courts have stated repeatedly that the fifth amendment permits a federal court to exercise personal jurisdiction over a defendant in a federal question case if that defendant has sufficient contacts with the United States as a whole. *E.g., Trans–Asiatic Oil Ltd. S.A. v. Apex Oil Co.,* 743 F.2d 956, 959

(1st Cir.1984); *Catrone v. Ogden Suffolk Downs, Inc.,* 647 F.Supp. 850, 853 (D.Mass. 1986); *Amtrol, Inc. v. Vent–Rite Valve Corp.,* 646 F.Supp. 1168, 1171 (D.Mass. 1986); *Buckeye Associates, Ltd. v. Fila Sports, Inc.,* 616 F.Supp. 1484, 1488 n. 5 (D.Mass.1985). In the present case, it cannot be contested that Solar, a Colorado corporation, has sufficient minimum contacts with the United States to satisfy this broad due process standard of the fifth amendment. The Court's jurisdictional inquiry, however, does not end here.

■ The next step is to determine whether the nationwide scope of personal jurisdiction in a federal question case is limited by Rule 4 of the Federal Rules of Civil Procedure. *Johnson Creative,* 743 F.2d at 950. As the *Johnson Creative* court stated:

Rule 4(f) generally limits the service of process of federal district courts to the territorial limits of the state in which the court is held. Rule 4(e) allows for service outside the state when authorized by a statute of the United States or when a statute or rule of court of the state in which the district court is held provides for such service.[3]

*Id.* Therefore, under Rule 4, there must be a federal statute that specifically authorizes nationwide service of process in order for the federal district court to exercise nationwide personal jurisdiction over a defendant in a federal question case. If there is no such statutory authorization,

---

**2.** The plain language of the Constitution supports this proposition because it would be "anomalous that a federal court adjudicating federally created rights and exercising the sovereign power of the United States should be bound by limitations developed under the Fourteenth Amendment, which by its own language applies only to the several states and not to the federal government." 4 C. Wright & A. Miller, *Federal Practice and Procedure: Civil 2d* § 1067.1, at 310 (2d ed. 1987).

**3.** Rule 4(e) and (f) state, in relevant part:

(e) **Summons: Service Upon Party Not Inhabitant of or Found Within State.** Whenever a statute of the United States or an order of court thereunder provides for service of a summons ... upon a party not an inhabitant of or found within the state in which the district court is held, service may be made

under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule. Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons ... upon a party not an inhabitant of or found within the state.... [s]ervice may in either case be made under the circumstances and in the manner prescribed in the statute or rule.

(f) **Territorial Limits of Effective Service.** All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state....

Fed.R.Civ.P. 4(e), (f).

the federal district court in a federal question case cannot exercise nationwide *in personam* jurisdiction. *E.g., Catrone,* 647 F.Supp. at 854; *Buckeye,* 616 F.Supp. at 1488 n. 5; *Colon v. Gulf Trading Co.,* 609 F.Supp. 1469, 1474–75 (D.P.R.1985). *See Merrill v. Zapata Gulf Marine Corp.,* 667 F.Supp. 37, 39 (D.Me.1987). In the present case, there is no federal statutory authorization for nationwide service of process under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, the Patent Act, 35 U.S.C. § 1 *et seq.* and the provisions of 28 U.S.C. § 1338. This Court thus cannot exercise nationwide personal jurisdiction over Solar.

■ Where there is no federal statute authorizing nationwide service of process the Court must look to the appropriate state rule of court, which is the Massachusetts long arm statute in this case, to determine whether it has jurisdiction over Solar. *See Johnson Creative,* 743 F.2d at 950; *Catrone,* 647 F.Supp. at 855 (citing *Buckeye,* 616 F.Supp. at 1488 n. 5). In this inquiry, the minimum contacts analysis under the fourteenth amendment acts as a precondition to the Court's exercise of personal jurisdiction in a federal question case. *See Johnson Creative,* 743 F.2d at 950.

**B. Massachusetts Long Arm Statute.**

Under the Massachusetts long arm statute, courts employ a two-part inquiry to determine whether they may exercise personal jurisdiction over a nonresident defendant: " '(1) is the assertion of jurisdiction authorized by the statute, and (2) if authorized, is the exercise of jurisdiction under State law consistent with basic due process requirements mandated by the United States Constitution?' " *Hahn v. Vermont Law School,* 698 F.2d 48, 50 (1st Cir.1983) (quoting *Good Hope Indus., Inc. v. Ryder Scott Co.,* 378 Mass. 1, 5–6, 389 N.E.2d 76 [1979]).

The long arm statute provides, in relevant part:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

(a) transacting any business in this commonwealth;

(b) contracting to supply services or things in this commonwealth;

(c) causing tortious injury in this commonwealth by an act or omission in this commonwealth;

(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

Mass.Gen.L. ch. 223A, § 3. Whistler has the burden of proving that this Court has personal jurisdiction over Solar under this statute. *American Freedom Train Found. v. Spurney,* 747 F.2d 1069, 1075 (1st Cir.1984).

Whistler's principal argument concerning this Court's jurisdiction is the following:

Because the brunt of the harm Solar caused by suing Whistler's product in Chicago was suffered in this State, and because Massachusetts is the focal point of the harm Solar's conduct has caused—Whistler's offices and manufacturing facilities are predominantly located here—jurisdiction *does* properly lie in this State.

Importantly, Whistler is not charging Solar with some form of mere "untargeted" negligence which only coincidentally injured Whistler in this state (sic). Rather, it is Solar's intentional conduct in specifically targeting Tandy's products, products which Solar *knew* were being manufactured for Tandy and which Solar *knew* before this lawsuit was filed were made by Whistler here in Massachusetts, which subjects it to this Court's jurisdiction.

Whistler's Memorandum in Opposition to Solar's Motion to Quash and to Dismiss at 3 (hereinafter "Whistler's Memorandum in Opposition") (emphasis in original). In essence, Whistler asserts that this Court has personal jurisdiction over Solar because, although Solar deliberately sued the distributor of a Whistler product in another

forum, the effect of such action was directed at the manufacturer in Massachusetts. This Court rules, however, that there is no provision in Mass.Gen. L. ch. 23A, § 3 which permits this Court to exercise personal jurisdiction over Solar.

### 1. Subsection 3(a)

■ Subsection 3(a), the "transacting any business" provision of the long arm statute "applies to any purposeful acts by an individual, whether personal, private, or commercial." *Ross v. Ross*, 371 Mass. 439, 441, 358 N.E.2d 437 (1976) (citations omitted). This provision has been construed broadly, *Hahn*, 698 F.2d at 50, and has been interpreted to extend to the limits of due process. *Balloon Bouquets, Inc. v. Balloon Telegrams Delivery, Inc.*, 18 Mass.App.Ct. 935, 936, 466 N.E.2d 523 (1984) (rescript). In fact, the purely statutory requirement for jurisdiction under this particular provision may be satisfied "where the only contact involved is an 'isolated' transaction, or one with 'little impact on the commerce' of the commonwealth." *Bond Leather Co. v. Q.T. Shoe Mfg. Co.*, 764 F.2d 928, 932 (1st Cir.1985) (quoting *Good Hope Indus.*, 378 Mass. at 8, 389 N.E.2d 76). Although such isolated contacts with Massachusetts may be constitutionally insufficient to support jurisdiction, this activity may " 'be viewed literally as having "transact[ed] ... business" in Massachusetts.' " *Id.* (quoting *Good Hope Indus.*, 378 Mass. at 8 n. 13, 389 N.E.2d 76 [quoting Mass.Gen.L. ch. 223A, § 3(a) ] ).

Despite the broad construction of subsection 3(a), Whistler has offered no concrete evidence supporting a finding that Solar does indeed fall within this statutory provision. Solar is a Colorado corporation which, within the past ten years, 1) has not conducted business in Massachusetts; 2) has not owned property in Massachusetts; 3) has not maintained a facility in Massachusetts; 4) has not maintained a telephone number in Massachusetts; 5) has not main-

tained a bank account in Massachusetts; 6) has not employed any person domiciled or officed in Massachusetts; and 7) has not offered any products for sale in Massachusetts. Affidavit of Glenn R. Nye at ¶ 3. These factors are the usual indicia of contact with a particular forum. *See Accutest Corp. v. Accu Test Systems, Inc.*, 532 F.Supp. 416, 419 (D.Mass.1982). In fact, Solar has neither sold nor manufactured a radar detector since 1974.[4] Deposition of Glenn Nye at 26. Whistler asserts that this Court's jurisdiction is based on the fact that Solar filed a lawsuit in another forum against the distributor of a product bought from a Massachusetts manufacturer. The Court rules such conduct is too attenuated to satisfy the statutory requirements of 3(a), and that there is no jurisdictional basis under this particular provision of the Massachusetts long arm statute.

### 2. Subsection 3(d)

■ Under subsection 3(d), Whistler must demonstrate that 1) Solar caused tortious injury in this commonwealth; and 2) Solar regularly does or solicits business or derives substantial revenue from goods used or consumed in this commonwealth. The Court concludes that Whistler has not proved either requirement of subsection 3(d).

First, Solar's lawsuit against Tandy in Chicago cannot constitute a "tortious act" such that any repercussions suffered by Whistler in Massachusetts would be a "tortious injury." "Tortious" is defined as "wrongful; of the nature of a tort," Black's Law Dictionary 1335 (5th ed. 1979), and it is commonly used to describe that "conduct ... [which] is of such a character as to subject the actor to liability under the principles of the law of Torts." Restatement (Second) of Torts § 6 (1965). Absent malicious prosecution and abuse of process, filing a lawsuit cannot be described as "wrongful" or as "of the nature of a tort." Whistler has not asserted any argument

---

**4.** Glenn Nye, the president and principal shareholder of Solar, stated that the company sold approximately 15,000 radar detectors between 1968 and 1974, and that these radar detectors were sold primarily in Colorado, Kentucky, Tennessee, Missouri, and Oklahoma. Deposition of Glenn Nye at 23. At the present time, Solar owns only the '08 Patent and some equipment previously used in the manufacture of radar detectors. *Id.* at 16.

nor alleged any fact which supports either a malicious prosecution or an abuse of process cause of action arising from Solar's lawsuit against Tandy filed in the Northern District of Illinois. The Court thus concludes that Whistler has not suffered any "tortious injury" in Massachusetts within the meaning of subsection 3(d) as a result of Solar's actions.[5]

Second, even if Whistler can satisfy the threshold requirement of "tortious injury" within subsection 3(d), it must also prove that Solar "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth." Nothing in the record indicates that Solar satisfies any of these requirements.[6] Thus, the Court rules that there is no basis for personal jurisdiction over Solar under subsection 3(d).

C.  Due Process and Minimum Contacts.

■ Even if Solar's conduct satisfies the requirements of the Massachusetts long arm statute, the Court's exercise of jurisdiction must be consistent with the basic due process requirements under the fourteenth amendment. In this particular case, the Court concludes that Solar has not purposely established minimum contacts in Masschusetts such that this Court's exercise of personal jurisdiction would comport with fair play and substantial justice. *Cf. International Shoe Co. v. Washington,* 326 U.S. 310, 319–20, 66 S.Ct. 154, 159–60, 90 L.Ed. 95 (1945).

Whistler relies heavily on the Supreme Court case *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) to support the proposition that Solar's filing a

lawsuit in the Northern District of Illinois constitutes "intentional conduct in [Illinois] ... calculated to cause injury to [Whistler in Massachusetts]...." 465 U.S. at 791, 104 S.Ct. at 1488. The Court, however, is not persuaded that *Calder* properly applies to this case. *Calder* involved the intentional publication of a libelous newspaper article in the plaintiff's home state; in the instant case, Solar is attempting to enforce its rights under the '08 Patent in Illinois. Although it is argued that this enforcement may have subsequent effects in Massachusetts, such conduct does not constitute an act by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (citation omitted). Accordingly, the Court rules that Solar's conduct of filing a lawsuit in the Northern District of Illinois does not satisfy the due process standard of "minimum contacts" with Massachusetts.[7] This Court, therefore, cannot exercise *in personam* jurisdiction over Solar.

For the reasons stated above, Solar's motion to dismiss is GRANTED.

---

5.  Although Whistler has not asserted an argument or any facts which would support this Court's jurisdiction over Solar under subsection 3(c) ("causing tortious injury by an act or injury in this commonwealth"), this Court further concludes that this analysis also would apply to the meaning of "tortious injury" within subsection 3(c) of Mass.Gen. Laws ch. 223A, § 3.

6.  Whistler does not assert any facts that Solar "regularly does or solicits business" in Massachusetts. *See* Subsection II(B)(1) *supra.*

7.  The record does not clearly indicate whether, at the time Solar brought the action against Tandy, Solar knew that one of Tandy's manufacturers was a Massachusetts corporation. This particular fact, however, is not the crux of this analysis. The Court assumes *arguendo* that 1) Solar knew that Whistler was the manufacturer of the allegedly infringing radar detector which was the basis of Solar's lawsuit against Tandy, and 2) Solar knew that Whistler was a Massachusetts corporation.