**UNITED STATES of America, Plaintiff,**

v.

**SWISS AMERICAN BANK, LTD., Swiss American National Bank, Swiss American Holding Company S.A. of Panama, and Inter–Maritime Bank, Geneva, Defendants.**

**No. CIV. A. 97–12811–WGY.**

United States District Court,
D. Massachusetts.

Sept. 30, 1998.

Stefan Cassella, Mia Levine, U.S. Dept. of Justice, Wahington, DC, Richard L. Hoffman, U.S. Attorney's Office, Boston, MA, for U.S.

Michael B. Keating, Sarah E. Cooleybeck, Foley, Hoag & Eliot, Boston, MA, for Swiss American Bank, Ltd., Swiss American National Bank.

Irene C. Freidel, Wm. Shaw McDermott, Ellen Bober Moyangh, Kirkpatrick & Lockhart, Boston, MA, for Inter–Maritime Bank, Geneva.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The government of the United States brings this action for breach of contract, unjust enrichment, and conversion against the defendant banks. The government seeks in excess of $7,000,000 in forfeited drug proceeds deposited at these banks into accounts controlled by convicted money launderer John E. Fitzgerald ("Fitzgerald"). The accounts were forfeited to the United States pursuant to the RICO forfeiture statute, 18 U.S.C. § 1963, in a Final Order of Forfeiture issued by this Court on May 4, 1994. *See United States v. Fitzgerald,* No. 93–CR–10149–Z (D.Mass. May 4, 1994).

The defendants Swiss American Bank, Ltd. ("Swiss American") and Swiss American National Bank ("Swiss National") (collectively "the Swiss American defendants") have moved to dismiss this action for lack of personal jurisdiction, improper venue, improper service of process, and failure to join an indispensable party. The defendant Inter–Maritime Bank, Geneva, now known as Bank of New York–Inter Maritime Bank, Geneva ("Geneva"), has moved separately to dismiss for lack of personal jurisdiction and improper venue, raising many of the same arguments as the Swiss American defendants. Geneva has also moved to dismiss, or in the alternative for summary judgment, for failure to state a claim upon which relief can be granted. The fourth defendant, Swiss American Holding Company S.A. of Panama ("Swiss Holding"), has not yet been served.

The government has requested an extension of time to take limited discovery on the issues of personal jurisdiction and the failure to join an indispensable party. The government advances three separate rationales for its discovery request.[1] First, the government asserts an "effects theory" of personal jurisdiction under which the Court may assert jurisdiction over a defendant whose "intentional, and allegedly tortious, actions were expressly aimed at" a plaintiff within the jurisdiction. Pltf.'s Mem. Supp. Mot. Extend Time at 5, (quoting *Calder v. Jones* 465 U.S. 783, 104 S.Ct. 1482 [1984] ). The government reasons that the jurisdictional inquiry will require it to adduce proof of intentional availment of the forum and avers that it requires limited discovery to support such proof.

The government's second theory is that if the defendants are not subject to the personal jurisdiction of a single state, they are subject to personal jurisdiction based upon the strength of their contacts with the United States as a whole under the provisions of Fed.R.Civ.P. 4(k)(2). This theory rests in turn upon the proposition that the claims for breach of contract, unjust enrichment, and conversion arise out of federal common law. The government argues that it should be permitted to engage in limited discovery in order to gather proof of the defendants' nationwide contacts. Finally the United States seeks discovery to address the joinder question.

In its opposition to Geneva's second motion for summary judgment, the government contends that Geneva is a part of an "Inter Maritime empire," with common ownership and control over all of the defendants in this action. United States' Mem. Opp. Summ. Judgment at 8. Liability, as well as personal jurisdiction, for Geneva is therefore premised on an "alter-ego" theory. The government once again requests an opportunity for discovery, in this instance under Fed.R.Civ.P. 56(f), to allow it an opportunity to oppose Geneva's summary judgment motion.

This memorandum discusses the personal jurisdiction arguments advanced by the government. Because the government has advanced no theory of jurisdiction that might be supported by limited discovery, the Court rejects these arguments, and concludes that it is without personal jurisdiction over either the Swiss American defendants or Geneva. It is therefore unnecessary to consider the remainder of the issues raised by the defendants' motions, as the Complaint will be dismissed.

---

1. *See Boit v. Gar–Tec Prods., Inc.,* 967 F.2d 671, 680–81 (1st Cir.1992), and cases therein cited (limited discovery on facts supporting personal jurisdiction appropriate). *See also Surpitski v.*

*Hughes–Keenan Corp.,* 362 F.2d 254, 255 (1st Cir.1966) (per curiam) (abuse of discretion in some circumstances to deny limited discovery on issues of personal jurisdiction).

## FACTS

For the purposes of these motions to dismiss, the Court accepts the well pleaded facts in the Complaint as true. The following facts are relevant to the personal jurisdiction issue.

### A. Swiss American Defendants.

The Swiss American Defendants are both located on the Island of Antigua, a part of the Caribbean nation of Antigua and Barbuda; both are organized under and operate pursuant to the laws of that country. All of the offices and employees of the banks are located in Antigua. This Court's May 4, 1994 Order forfeited to the United States assets held or controlled by Fitzgerald, including funds deposited into the Swiss American Bank, Ltd. and the Swiss American National Bank in St. Johns, Antigua. The Complaint alleges on information and belief that in December 1994 or January 1995, after the entry of the Final Order of Forfeiture, the Swiss American defendants transferred slightly more than $5,000,000 to the Government of Antigua from the Fitzgerald accounts without the consent of the United States. The Complaint further alleges on information and belief that at about the same time the banks reduced the remaining balance in the Fitzgerald accounts to zero, and that the banks kept these funds, $2,000,000 or more, for their own use.

### B. Geneva.

Geneva is a bank incorporated and operated under the laws of Switzerland with its principal place of business in Geneva, Switzerland. According to the bank, none of its assets or accounts is located in Massachusetts, no offices are located in Massachusetts or any place in the United States. Likewise, it does not advertise or solicit business from residents of Massachusetts or anywhere in the United States.

The Complaint alleges that Geneva, along with the as yet unserved defendant, Swiss Holding, controlled or was the alter-ego of the Swiss American defendants. Complaint ¶ 4. The complaint asserts each of the three Counts against the four defendants collec-

tively, referred to as "SAB", under this alter-ego theory.

## DISCUSSION

### A. The Government's Burden.

■ The government bears the burden of proving the existence of personal jurisdiction over each defendant. *See Foster–Miller, Inc. v. Babcock & Wilcox Canada,* 46 F.3d 138, 145 (1st Cir.1995). The First Circuit has identified three separate levels of evidentiary showing necessary to meet that burden. In the ordinary case, in which facts concerning personal jurisdiction are undisputed and the matter is relatively simple, the court accepts all of the plaintiff's properly documented evidentiary proffers as true, considering only whether the evidence, if credited, would be sufficient to establish personal jurisdiction. *See Boit v. Gar–Tec Prods., Inc.,* 967 F.2d 671, 675 (1st Cir.1992). The second option is a traditional evidentiary hearing, at which the court sits as a finder of fact. This procedure is appropriate when the evidence is conflicting or the plaintiff's proffers are "patently incredible." *Id.* at 676. Finally, there is a middle ground, enabling the court to weigh evidence, but limiting the findings to probable outcomes as opposed to definitive facts. *See id.* at 678. This last method recommends itself to cases in which the personal jurisdiction question is bound up with the merits of the case. *See id.*

The Court sees no reason in this case to deviate from the norm. Although at first blush, the government's request for pre-jurisdictional discovery might suggest the need for fact finding, the Court concludes, for reasons that will become clear, that no material facts are in issue. The Court therefore will regard the plaintiff's proffers of evidence as accurate, proceeding to examine the personal jurisdiction question as matter of law.

### B. Massachusetts Long Arm Statute.

The government does not dispute the fact that all three defendants are foreign corporations. As such, in order for this Court to exercise personal jurisdiction over them, each ordinarily must satisfy the provisions of the Massachusetts long-arm statute, Mass.

Gen. Laws ch. 223A, § 3,[2] as well as the due process requirements set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny.

■ Under the long-arm statute, the claim for which personal jurisdiction is asserted must arise out of the defendant's contacts with the forum. The United States, relying on *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) and *Noonan v. Winston Co.*, 135 F.3d 85, 90–91 (1st Cir. 1998), asserts that jurisdiction under subsection (d) might be proper, reasoning that the conversion of the funds in the Fitzgerald accounts caused harm within Massachusetts, and that if that act were intentionally directed at the United States in the District of Massachusetts, jurisdiction would attach.

■ The government's major premise is faulty in that purposeful availment is a necessary, *see World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), but not sufficient, due process criterion for the exercise of personal jurisdiction. In *Calder*, the Supreme Court specifically noted that, in addition to purposeful availment, the injury to the plaintiff had to occur in the forum state in order for personal jurisdiction to be consistent with due process. *See Calder*, 465 U.S. at 789–90, 104 S.Ct. 1482. Here, this requirement is embedded not only in the due process clause, but also in the text of chapter 223A(3)(d) itself. In relying on *Calder*, the government neglects to argue or demonstrate that the injury to the United States occurred in Massachusetts.

■ In conversion cases, as distinct from the reputational torts at issue in *Calder* and *Noonan*, the injury to the plaintiff occurs in the place where the property is converted. *See Wenz v. Memery Crystal*, 55 F.3d 1503,

1508 (10th Cir.1995); *American Sav. Bank v. Cheshire Management Co.*, 693 F.Supp. 42, 46 (S.D.N.Y.1988) ("In cases of conversion, the injury is deemed to occur in the place where the defendant's acts respecting the property are committed.") (citations omitted) (internal quotation marks omitted).

Furthermore, subsection (d) requires, in addition to purposeful availment and injury within the state, that the defendant derive substantial revenues from "goods used or consumed or services rendered in the commonwealth." All of the services provided by the defendant banks were provided in Antigua. The fact that the depositor Fitzgerald was a Massachusetts resident, even if the shell corporations that controlled the accounts are ignored, does not resurrect the government's argument, because whatever revenue the banks derived was not from services rendered in Massachusetts.

Because the government has failed to establish the necessary elements of personal jurisdiction under subsection 3(d), its request to conduct discovery on the issue of intent in order to show purposeful availment must be denied. Even if the Swiss American defendants' purposeful availment of the Massachusetts forum were established, the government does not carry the balance of its burden to show that this Court has jurisdiction.

## C. Nationwide Contacts.

The government argues in the alternative that, even if the Massachusetts long-arm statute has not been satisfied, the government may exercise jurisdiction over the defendants based upon their contacts with the United States as a whole pursuant to Fed. R.Civ.P. 4(k)(2). Prior to 1993, Rule 4 provided a nationwide personal jurisdiction in a federal question case only if there was a federal statute or rule of court providing for nationwide service of process. Absent such

---

**2.** Section 3 provides in relevant part:

A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

(a) transacting any business in this commonwealth;

(b) contracting to supply services or things in this commonwealth;

(c) causing tortious injury by an act or omission in this commonwealth;

(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth; . . . .

statutory authorization, there could be no personal jurisdiction. *See Whistler Corp. v. Solar Elec., Inc.*, 684 F.Supp. 1126, 1128–29 (D.Mass.1988). In 1993, however, the Rule was amended to include new subsection (k)(2),[3] which extends nationwide jurisdiction whenever consistent with due process in cases arising under federal law, if the defendant is not subject to jurisdiction in any state.

The United States asserts that its claims for conversion, unjust enrichment, and breach of contract arise under the federal common law, and thus give rise to personal jurisdiction under Rule 4(k)(2). In support of its discovery request, the United States contends that it pleads, but cannot yet prove, the existence of sufficient national contacts to support jurisdiction.

■ Despite the defendants' contention that "federal law" means statutory authorization, the textual development of the Rule, as well as the Advisory Committee Notes, indicate that the new provision means to reach all cases arising under federal law generally, supplementing another provision, (k)(1)(D), which specifically refers to statutory authorizations. Thus, whether an action arises under a federal statute or under federal common law, subsection (k)(2) provides for personal jurisdiction over the defendant, assuming the other terms of the rule are met.

Indulging for a moment the proposition that the government's claims arise under federal common law,[4] the Court notes that the government must nevertheless satisfy each additional element of Rule 4(k)(2) in order to warrant the additional discovery it seeks.

■ The Rule requires, in addition to constitutional limitations, that no state be able to exercise personal jurisdiction over the defendant in its courts of general jurisdiction. *See Pharmachemie B.V. v. Pharmacia, S.p.A.*, 934 F.Supp. 484, 487 (D.Mass.1996). Although it may seem reasonable to assume that this is such a case, given the arguments advanced with respect to the Massachusetts long-arm statute, the government must prove its theory of personal jurisdiction. It has made no attempt to do so, even after the Court once advised it that it must come forward with adequate justification to warrant engaging in discovery. While the government specifically identifies Arkansas, California, Colorado, Florida, New York, Ohio, and Texas as states with which the defendants or some of them have contacts, *see* United States Mem. Enlargement 8, it does not contend that those states' long-arm provisions bar jurisdiction over the defendants nor does it appear to have thought to research the issue.

Admittedly, this requirement of subdivision (k)(2) forces the government to take inconsistent alternative positions: that jurisdiction is proper in Massachusetts, *or* that

3. Subsection (k)(2) provides:
   If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.
   The Court is unable to decipher Geneva's cryptic comment that the enactment of Rule 4(k)(2) "does not effect [sic] application of these legal principles to the claims alleged in this case." Geneva's Opp. Enlargement of Time at 5 n. 7. It certainly affects the disposition of this case, as it provides the only plausible basis for jurisdiction.

4. The Court expresses no opinion on the government's federal common law theory, except to note the existence of substantial authority for the general proposition that federal common law controls many instances in which the United States asserts its own property rights in federal

court. *See, e.g. Clearfield Trust Co. v. United States* 318 U.S. 363, 366, 63 S.Ct. 573, 87 L.Ed. 838 (1943) ("the rights and duties of the United States on commercial paper which it issues are governed by federal law rather than local law."); *United States v. Carson*, 372 F.2d 429, 433–34 (6th Cir.1967) (security interest held by the United States arising out of Bankhead–Jones Farm Tenant Act governed by federal common law); *United States v. Sommerville*, 324 F.2d 712, 716 (3rd Cir.1963) (same). The First Circuit has applied the rule of *Clearfield* on numerous analogous occasions. *See, e.g., United States v. Olsen*, 515 F.2d 1269, 1271 (1st Cir.1975) (action on Small Business Administration loan guaranty); *United States v. Cambridge Trust Co.*, 300 F.2d 76, 77 (1st Cir.1962) (action to recover amounts paid on fraudulent postal money orders). A decision on whether the *Clearfield* doctrine would create a federal common law claim to which Rule 4(k)(2) applies must await another day.

jurisdiction is proper in no state. But there is nothing to prevent the government from pursuing alternative pleadings or arguments. *See* Fed.R.Civ.P. 8(e)(2). It simply has not done so.

The government seeks discovery on the issue of constitutional minimum contacts with the United States as a whole. But without at least pleading that no state has jurisdiction, the United States has failed to make out the elements of personal jurisdiction under subdivision (k)(2) that would justify pre-jurisdictional discovery in this matter.

Moreover, in its post hearing submission concerning the proposed discovery, the government completely abandons its Rule 4(k)(2) argument, focusing exclusively on the constitutional relatedness analysis on its Massachusetts long-arm theory. The government now devotes its entire attention to Massachusetts contacts, and provides neither authority nor any suggestion of evidence that would allow this Court to evaluate the potential for jurisdiction in other state courts of general jurisdiction. Absent such a showing, this Court will not permit discovery directed to that issue. As a result, neither the state long-arm theory nor the Rule 4(k)(2) theory can forestall resolution of the personal jurisdiction issue against the government.

## CONCLUSION

The Court holds that the United States has failed to carry its burden of establishing personal jurisdiction over any of the moving defendants, under either Mass. Gen. Laws ch. 223A, § 3(d), or Fed.R.Civ.P. 4(k)(2). Accordingly, the motion to dismiss is GRANTED pursuant to Rule 12(b)(2). This Court is without personal jurisdiction.