**UNITED STATES of America,**
**Plaintiff,**

v.

**SWISS AMERICAN BANK, LTD., Swiss American National Bank, Swiss American Holding Co. S.A. of Panama, and Inter–Maritime Bank, Geneva, Defendants.**

No. Civ.A. 97–12811–WGY.

United States District Court,
D. Massachusetts.

Sept. 29, 2000.

Irene C. Freidel, Kirkpatrick & Lockhart, Boston, MA, for defendant.

Wm. Shaw McDermott, Kirkpatrick & Lockhart, Boston, MA, for defendant.

Ellen Bober Moyangh, Kirkpatrick & Lockhart, Boston, MA, for defendant.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

### I. BACKGROUND

This is an action by the government for breach of contract, unjust enrichment, and conversion against Swiss American Bank, Ltd., and Swiss American National Bank (collectively "the Swiss American banks"), as well as Swiss American Holding Co. S.A. of Panama ("Swiss American Holding Co.") and Inter–Maritime Bank, Geneva ("Inter–Maritime Bank"). The government seeks to recover $7,000,000 in forfeited drug proceeds that convicted money launderer John E. Fitzgerald deposited into accounts at the Swiss American banks from 1985 to 1987. The accounts were forfeited to the United States under the Racketeer Influenced and Corrupt Organizations forfeiture statute, 18 U.S.C. § 1963, in 1994. *See United States v. Fitzgerald,* No. 93–10149–RWZ (D.Mass. May 4, 1994). The government alleges that, subsequent to the forfeiture, the Swiss American banks in December, 1994, or January, 1995, illegally transferred $5 million to the government of Antigua, and confiscated the remaining $2,000,000.

In September, 1998, this Court dismissed the complaint, holding that neither the Massachusetts long-arm statute nor Federal Rule of Civil Procedure 4(k)(2) gave the Court personal jurisdiction over the defendants. *See United States v. Swiss Am. Bank, Ltd.,* 23 F.Supp.2d 130, 136 (D.Mass.1998) (hereinafter *"Swiss I "*). On appeal, the First Circuit upheld this Court's finding that it did not have personal jurisdiction pursuant to the Massachusetts long-arm statute, but vacated the

holding pertinent to Rule 4(k)(2) and remanded the case to this Court with a newly articulated methodology for applying the federal rule. *See United States v. Swiss Am. Bank, Ltd.,* 191 F.3d 30, 44–45 (1st Cir.1999) (Selya, J.) (hereinafter *"Swiss II "*).

At a hearing before this Court on Jan. 6, 2000, the parties[1] agreed that the defendants would submit new motions to dismiss. Accordingly, the Swiss American banks and Inter–Maritime Bank filed such motions. The government opposed the motions to dismiss and, in the alternative, moved to stay decision on the defendants' motions to dismiss and for leave to conduct discovery relating to personal jurisdiction, indispensable parties, and alter ego.

The Court heard oral arguments on the motions on March 30, 2000. At that hearing, the Court allowed the motion to dismiss of Inter–Maritime Bank for failure adequately to plead allegations of alter ego liability and for lack of personal jurisdiction. The Court took under advisement the Swiss American banks' motions to dismiss for lack of personal jurisdiction, for failure to join an indispensable party, on the grounds of *forum non conveniens,* and for defective service.

### II. DISCUSSION

#### A. Applicable Standard of Law

Taking all facts and inferences drawn therefrom in the plaintiff's favor, this Court should only grant a motion to dismiss "if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Figueroa v. Rivera,* 147 F.3d 77, 80 (1st Cir.1998). Despite this low threshold, the pleading requirement is "not entirely a toothless tiger." *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 190 (1st Cir.1996). In order to survive a motion to dismiss, the plaintiff must set forth "factual allegations, either direct or inferential, respecting each material ele-

---

1. Swiss American Holding Co. has never appeared in this action. The Court expresses no opinion in this memorandum and order concerning its status. Further references to "the defendants" excludes Swiss American Holding Co.

ment necessary to sustain recovery...." *Cooperman v. Individual, Inc.,* 171 F.3d 43, 47 (1st Cir.1999) (quoting *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 [1st Cir.1988]). As such, the Court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like...." *Rogan v. Menino,* 175 F.3d 75, 77 (1st Cir.1999).

### B. Personal Jurisdiction under Rule 4(k)(2)

■ To exercise personal jurisdiction under Fed.R.Civ.P. 4(k)(2), "(1) the plaintiff's claim must be one arising under federal law; (2) the putative defendant must be beyond the jurisdictional reach of any state court of general jurisdiction; and (3) the federal courts' exercise of personal jurisdiction over the defendant must not offend the Constitution or other federal law." *Swiss II,* 191 F.3d at 38. The Court of Appeals held that the first requirement has been met. *See id.* at 45. The second requirement, which the Court of Appeals called "the negation requirement," is subject to a modified burden-shifting regime, described as follows:

> The plaintiff ... must certify that, based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state. If the plaintiff makes out his prima facie case, the burden shifts to the defendant to produce evidence which, if credited, would show either that one or more specific states exist in which it would be subject to suit or that its contacts with the United States are constitutionally insufficient. Should the defendant default on its burden of production, the trier may infer that person-

al jurisdiction over the defendant is not available in any state court of general jurisdiction.

*Swiss II,* 191 F.3d at 41–42 (internal citations omitted). As required by this newly articulated methodology, the government has certified that the defendants are not subject to suit in the courts of general jurisdiction of any state. *See* Pl.'s Mem. in Opp'n to Swiss Am.'s Mot. to Dismiss at 12. In their reply memoranda, the defendants make no effort to refute the government's claim. Therefore, the defendants are "deemed to have conceded the negation issue, and the [government], to succeed in [its] Rule 4(k)(2) initiative, need only prove that [its] claim arises under federal law and that the defendant has contacts with the United States as a whole sufficient to permit a federal court constitutionally to exercise personal jurisdiction over it." *Swiss II,* 191 F.3d at 42.

Therefore, the only question for this Court to decide is whether to exercise personal jurisdiction over the Swiss American banks violates their constitutional rights under the Due Process Clause. More specifically, this Court must determine whether "the defendants have adequate contacts with the United States as a whole to support personal jurisdiction and [whether] an assertion of jurisdiction over them would be reasonable." *Id.* at 45.

■ Personal jurisdiction may take two forms—specific and general. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Phillips Exeter Acad. v. Howard Phillips Fund,* 196 F.3d 284, 288 (1st Cir.1999). This well-established principle has been held to apply to the invocation of personal jurisdiction under Rule 4(k)(2).[2] *See AT & T Co. v. Compag-*

2. The First Circuit Court of Appeals has implied that both forms may be invoked through Rule 4(k)(2). In *Swiss II,* the Appeals Court stated that Rule 4(k)(2) is a means of exercising *specific* personal jurisdiction, *see* 191 F.3d at 36, but the Swiss American banks suggest that this comment likely stemmed from the Court's belief that the government was employing a specific jurisdiction theory, *see* Swiss Am.'s Mem. in Supp. of Mot. to Dismiss

at 8 n. 2. Indeed, the Court of Appeals made a passing reference to the permissibility of a general jurisdiction analysis, but explained in a footnote that, "because the government's claim in this case does not invoke this 'general personal jurisdiction,' we do not dwell on it." *Swiss II,* 191 F.3d at 36 n. 3. (The Swiss American banks correctly note that the government *did* initially invoke a general jurisdic-

*nie Bruxelles Lambert,* 94 F.3d 586, 588–89 (9th Cir.1996); *SEC v. Knowles,* 87 F.3d 413, 418 (10th Cir.1996); *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.,* 956 F.Supp. 427, 439 (S.D.N.Y.1996). The minimum contacts requirement is different for each form.

 Specific personal jurisdiction may be asserted if "the claim that undergirds the litigation directly relates to or arises out of" the defendant's contacts with the forum. *See Phillips,* 196 F.3d at 288. Absent specific jurisdiction, general jurisdiction may be invoked over the defendant if her contacts are sufficiently "continuous and systematic" that the assertion of jurisdiction is "reasonable and just." *See id.*

### C. Application of Rule 4(k)(2)

Because the constitutional questions presented are in essence "minimum contacts" analyses, it may be helpful at the outset to enumerate the contacts alleged by the government, and accepted as fact for the purposes of the motion to dismiss:

(1) The Swiss American banks placed at least twelve advertisements in American Way magazine, a publication of American Airlines, in 1992 and 1993, and entered into a contract for the publication of at least six of those ads.[3] *See* de Kluiver Aff. ¶¶ 5–6, Exs. A–D.

(2) The Swiss American banks were subscribers to, and had a contractual agreement with, Visa International, a credit card company in Foster City, California. The dates of the subscriber agreement and contract are not part of the record. *See id.* ¶ 7.

(3) The Swiss American banks were a "principal member" of, and entered into a licensing agreement with, MasterCard International in Purchase, New York. The dates of the agreement and membership are not part of the record. *See id.* ¶ 8.

(4) The Swiss American banks in 1990 filed a lawsuit against a Florida resident, apparently over a contract dispute between the banks and a Florida corporation.[4] *See id.* ¶¶ 9–10.

(5) Information about the Swiss American banks was listed on at least three World Wide Web sites in March, 1998. The record does not indicate when the information was placed on these web sites, which are now defunct, or whether the information was placed by Swiss American or a third-party. *See id.* ¶ 12, Exs. E–F.

(6) The Swiss American banks in 1996 entered into a contract with Arkansas Systems, Inc., of Little Rock, Arkansas, for the provision of ATM support services. *See* de Kluiver Aff. ¶ 13, Ex. G.

(7) The Swiss American banks entered into a joint venture with Home State Savings Bank of Ohio sometime before 1985, the year that the savings and loan collapsed. *See id.* ¶ 14, Ex. H.

(8) The Swiss American banks in 1996 loaned $350,000 to a Colorado company that runs an Internet information service in Oklahoma, "Sportspiks." *See id.* ¶¶ 15–16, Exs. I–K.

tion theory, and adopted a specific jurisdiction analysis in memoranda to this Court only after the case was remanded. *See* Swiss Am's. Reply Mem. in Supp. of Mot. to Dismiss at 5.)

Moreover, from a practical standpoint, it seems that the constitutional inquiry under Rule 4(k)(2) would more often than not require a general jurisdiction analysis, because an action arising from the defendants' contacts within the forum (the hallmark of a specific jurisdiction analysis) would likely trigger a state long-arm statute and obviate the need to employ the rule.

3. At least one of the quarter-page ads invited readers to inquire about a MasterCard or Visa through Swiss American Bank, and list Antigua phone and facsimile numbers. *See* de Kluiver, Aff.Ex. A.

4. Although the Affidavit states that Swiss American banks initiated suit, it cites *Freedman v. Swiss–American Bank, Ltd.,* 566 So.2d 800 (Fla.Dist.Ct.App.1990), in which Swiss American was the appellant in an action dismissed by the court on its own motion for failure to comply with a court order and failure to comply with the Florida Rules of Appellate Procedure.

(9) The Swiss American banks "may have" had business relations in 1996 with a California company, Nhancement Technologies, Inc. *See id.* ¶ 17, Exs. L–M.

(10) The Swiss American banks "had correspondent banking relationships and accounts" with four New York banks. *See id.* ¶ 18.

(11) The Swiss American banks "had a substantial business relationship" with Fitzgerald, in which an employee of the banks "advised Fitzgerald to establish a series of offshore companies whose bank accounts ... would be used to move monies from Massachusetts ... in order to conceal the ownership, location, source and nature of these monies." *See* Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss at 15–16 (quoting Compl. ¶ 23). Fitzgerald then deposited $7.5 million "originating from, or passing through" Massachusetts into accounts at the Swiss American banks, and these deposits accounted for nearly one third of the total deposits held by the banks at that time. *See* de Kluiver Aff. ¶ 19.

### 1. Specific Personal Jurisdiction

■ The constitutional inquiry for determining whether specific personal jurisdiction applies proceeds in three steps: relatedness, purposeful availment, and reasonableness. *See Swiss II,* 191 F.3d at 36. At the first stage, the court must ask whether the claim at issue arises out of or is related to the defendant's conduct within the forum state. *See id.* It is apparent from the record that all of the activities that could feasibly have given rise to the claims at issue occurred outside the United States. Indeed, the government, while asserting that it has stated a "colorable case" in satisfaction of the minimum contacts requirement for specific personal jurisdiction, offers scant evidence in support of that conclusion. Its sole claim that "an employee of [the Swiss American banks] advised Fitzgerald to establish a series of offshore companies," *see* Compl. ¶ 23, for the purpose of money laundering simply does not support a conclusion that the charges arise from contacts with the fo-

rum. The Court of Appeals addressed this point, albeit indirectly, in its analysis of the Government's claims under the Massachusetts long-arm statute:

First and foremost, there is no showing here that the United States suffered tortious injury in Massachusetts. The legal injury occasioned by the tort of conversion is deemed to occur where the actual conversion takes place. In this instance, the bank accounts were depleted and the forfeited assets redirected in Antigua, and, thus, the claimed injury occurred there. By like token, since the government's claim of unjust enrichment is essentially a claim for restitution based on the alleged conversion, the legal injury stemming from it also must be presumed to have taken place in Antigua.

*Swiss II,* 191 F.3d at 39 (citations omitted).

The government seeks to fortify its argument by subdividing the analysis of specific jurisdiction into two strains, one based on contacts "relating to" the government's claims, and the other based on contacts "arising from" the government's claims. *See* Pl.'s Reply Mem. in Opp'n to Mot. to Dismiss at 8–12. Presumably, the government makes this distinction in an effort to overcome the weaknesses in its relatedness showing; the government has a greater chance of showing that its claims are "related to" the Swiss American banks' contacts with the United States than that they directly "arise from" those contacts. The Court of Appeals has made no such explicit distinction, but acknowledges some flexibility in applying a standard in which there must be a "meaningful link" between a defendant's contacts with the forum and the claims. *See Nowak v. Tak How Invs., Ltd.,* 94 F.3d 708, 715 (1st Cir.1996). In *Nowak,* the Court of Appeals held that a foreign hotel's solicitation of business in Massachusetts was sufficiently related to a claim for the wrongful death of a Massachusetts resident at the hotel to permit this Court's exercise of personal jurisdic-

tion over the hotel. *See Nowak*, 94 F.3d at 716–17. The Appeals Court stated,

> When a foreign corporation directly targets residents in an ongoing effort to further a business relationship, and achieves its purpose, it may not necessarily be unreasonable to subject that corporation to forum jurisdiction when the efforts lead to a tortious result.... If the resident is harmed while engaged in activities integral to the relationship the corporation sought to establish, we think the nexus between the contacts and the cause of action is sufficiently strong to survive the due process inquiry at least at the relatedness stage.

*Id.* at 715–16. The government argues that *Nowak* is analogous to the case at bar, because the Swiss American banks voluntarily cultivated a business relationship with Fitzgerald, and that relationship led to the alleged acts of conversion and unjust enrichment. Unlike *Nowak*, however, here it cannot be said that the Swiss American banks' actions "set in motion a chain of reasonably foreseeable events resulting in" the alleged acts of conversion and unjust enrichment. *Id.* at 716. The harm was not "integral to the relationship the corporation sought to establish," *id.*, but rather occurred at least seven years after the banks' relationship with Fitzgerald bore the fruit of his deposits, and was only tangentially related to the banks' alleged contacts with Fitzgerald. There is simply no "meaningful link" between the claims and the defendants' contacts with the United States.

*Phillips*, 196 F.3d at 288, which dealt with a set of facts and claims more closely analogous with those in the case at bar, helps illuminate the weakness in the government's claim. In *Phillips*, a school in New Hampshire brought an action against a Florida investment fund for alleged breach of contract and tortious acts related to the fiduciary relationship between the parties. *See id.* The Court of Appeals rejected the plaintiff's argument that the defendant should be subjected to specific jurisdiction in New Hampshire because the claims arose from the parties' ongoing, interstate relationship, holding:

> It is not the relationship itself, but the content of the parties' interactions that creates constitutionally significant contacts. Thus, "[t]he relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state."

*Id.* at 290 (quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 [1st Cir.1995]). Like the plaintiff in *Phillips*, the government here alleges that the "substantial business relationship" between the Swiss American banks and Fitzgerald gave rise to the conversion and unjust enrichment claims. *See* Pl.'s Reply Mem. in Opp'n to Mot. to Dismiss at 10. For the purposes of a specific jurisdiction analysis, this relationship is even more attenuated than that in *Phillips*, because in the case at bar the relationship effectively had ceased at least seven years before the tortious acts are alleged to have occurred. The Court concludes that the contacts alleged by the government are not sufficiently related to the causes of action in the complaint to merit the exercise of specific personal jurisdiction over the defendants in the United States.

Given that the government cannot clear the first hurdle of the specific personal jurisdiction analysis, there is no need to consider the purposeful availment or reasonableness elements of that analysis.

### 2. General Personal Jurisdiction

When a plaintiff's claims do not arise from a defendant's contacts with the forum, a court may assert general jurisdiction over a defendant only if her contacts are sufficiently "continuous and systematic" that the assertion of jurisdiction is "reasonable and just." *See Helicopteros*, 466 U.S. at 415, 104 S.Ct. 1868. The government alleges that the Swiss American banks have had "numerous contacts" with

the United States, including: the initiation of litigation in a Florida court in 1990; contractual relationships with entities in eight states; the placement of advertisements in a magazine circulating in the United States; and the placement of advertisements and information about the banks on a handful of Internet web sites. *See* Pl.'s Mem. in Opp'n to Mot. to Dismiss at 15. The government argues that these contacts satisfy the minimum contacts requirement for the assertion of general jurisdiction. To support its argument, the government cites *T.H. Davies & Co. v. Republic of Marshall Islands,* 174 F.3d 969, 975 (9th Cir.1998), in which the Ninth Circuit, without discussion, held that a foreign company's series of purchases from United States businesses constituted "a consistent and substantial pattern of business relations which warrant the exercise of general personal jurisdiction over them." *Id.*

But *Davies,* aside from being less authoritative than the numerous First Circuit opinions cited by the defendants and described below, failed to apply the "continuous and systematic" standard that the government concedes must control the outcome here. Furthermore, the two United States District Court cases also cited by the government are plainly distinguishable from the case at bar. In *WMW Mach., Inc. v. Werkzeugmaschinenhandel,* 960 F.Supp. 734, 744 (S.D.N.Y.1997), the District Court for the Southern District of New York explicitly noted that the foreign defendant operated two offices in the United States and had numerous employees there, and held that the solicitation of business from those offices constituted "continuous and systematic" contacts. The government has not alleged that the Swiss American banks have had any business presence in the United States. In *Meadows v. The Dominican Republic,* 628

F.Supp. 599, 607 (N.D.Cal.1986), *aff'd,* 817 F.2d 517 (9th Cir.1987), the District Court for the Northern District of California held that the national government of the Dominican Republic had "continuous and systematic" contacts with the United States, consisting of the initiation of at least two lawsuits, the operation of a state airline, the promotion of tourism, and the ongoing maintenance of at least two consulates. The government cites this case for the proposition that a defendant's use of the forum courts contributes to an assertion of general jurisdiction, but the obvious difference in the magnitude of the contacts in *Meadows* when compared to those in the case at bar is indicative of the weakness of the government's general jurisdiction claim. Most of the contacts here enumerated by the government occurred in 1996, long after the alleged breach of contract and tortious acts are alleged to have occurred. Even including those contacts in the analysis, however, fails to raise the contacts alleged by the government to a degree that reasonably could be considered "continuous and systematic."

In contrast, there are numerous authoritative First Circuit opinions supportive of the Swiss American banks' assertion that the minimum contacts alleged by the government are not "continuous and systematic" enough to merit the assertion of general jurisdiction.[5] In *Noonan v. The Winston Co.,* 135 F.3d 85, 89 (1st Cir. 1998), the Court of Appeals held that a British company's contacts with Massachusetts were not sufficiently "systematic and continuous" to warrant the assertion of general jurisdiction in this district, even though the company regularly solicited and received business from a Massachusetts company and sent foreign nationals to Massachusetts to solicit business. *See id.* at 93. The sporadic, unrelated

---

**5.** The analyses in these cases involve assessments of contacts with an individual state, as opposed to the instant case, which examines the defendants' contacts with the United States as a whole. This does not compromise the authority of these cases, because the mode of the analysis is the same under Rule 4(k)(2) as it would be were the constitutional question posed as to the reach of a state long-arm statute; the only difference is that the forum is the United States as a whole, as opposed to a single state.

contacts the Swiss American banks allegedly had with the United States are less systematic than the regularly occurring contacts alleged in *Noonan.* Furthermore, they are less continuous than the contacts alleged in *Donatelli v. Nat'l Hockey League,* 893 F.2d 459 (1st Cir. 1990), in which the First Circuit held that ten years of providing league officials at exhibition hockey games, scouting, providing television broadcasts, and selling products bearing the National Hockey League logo, taken together, did not meet the due process test. *See id.* at 470. In *Glater v.. Eli Lilly & Co.,* 744 F.2d 213, 215 (1st Cir.1984), the defendant corporation advertised its products in the forum state, employed eight sales representatives within the state, and conducted business in the state, but the court nonetheless held that its "vestigial" contacts were "not so manifold" as to satisfy the constitutional standard for the exercise of general jurisdiction. *See id.* These cases provide ample support for the conclusion that the Swiss American banks' alleged contacts with the United States are not sufficiently "systematic and continuous" to warrant the assertion of general jurisdiction over the Swiss American banks.

### 3. Further Discovery

Indeed, so "bootless," *see United States v. Flemmi,* 225 F.3d 78, 90 (1st Cir.2000), is the government's showing here in light of the applicable authority, that it has made no colorable claim sufficient to entitle it to any further discovery.

## III. CONCLUSION

For the reasons stated above, the Court ALLOWS the Swiss American banks' motion to dismiss for lack of personal jurisdiction. Having so ruled, the Court need not discuss the issues of *forum non conveniens,* failure to join an indispensable party, or defective service.